1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                     EASTERN DISTRICT OF CALIFORNIA

9

10   ROBERT WESLEY COWAN,                    Case No.  1:19-cv-00745-DAD

11              Petitioner,                  DEATH PENALTY CASE

12         v.                                ORDER (1) DETERMINING EXHAUSTION
                                             STATUS OF AMENDED PETITION, and (2)
13   BRIAN CATES, Warden of the California   HOLDING FEDERAL PROCEEDINGS IN
     Correctional Institution,               ABEYANCE DURING PENDENCY OF
14                                           STATE EXHAUSTION PROCEEDINGS
                Respondent.[1]
15

16

17         On November 5, 2021, counsel for petitioner moved for a stay of his federal habeas

18   proceeding pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), so that he may present the state

19   court with unexhausted claims 1.B.2, 2.D, 2.E, and 3.B, contained in the federal amended habeas

20   corpus petition filed that same day pursuant to 28 U.S.C. § 2254.

21         Respondent Warden Brian Cates, through counsel, filed his response to the motion on

22   November 22, 2021.  Petitioner filed his reply in support of the motion on November 29, 2021.

23   The motion was then taken under submission for decision.[2]

24         On December 8, 2021, the court directed the parties meet and confer and advise it on the

25   exhaustion status of the amended petition.  Concurrently, the court ordered the instant *Rhines*

26   ───────────────────

27   [1]  *See* Doc. No. 51.

28   [2]  *See* Doc. Nos. 17 at 3; 43.  Unless noted otherwise, all references in this order are to CM/ECF
     system pagination.

                                             1

motion held in abeyance of its exhaustion determination.  On February 7, 2022, the parties timely filed their joint statement on the exhaustion status of the amended petition.

Having considered the parties' filings, the record in this case, and the applicable legal authority, the court finds that: (i) the federal amended petition is exhausted with the exception of petitioner's claims/Subclaims 1.B.2, 1.C,  2.D, 2.E, 3.B, 3.K, and 24 which are unexhausted; (ii) petitioner has satisfied the  requirements for the granting of a stay pursuant to the Supreme Court's decision in *Rhines* as to his Subclaim 3.B; and (iii) this federal habeas action shall be stayed pending exhaustion proceedings in state court.

## I. BACKGROUND

The facts of this case, as reflected in the court's docket, are summarized as follows.  On August 5, 1996, petitioner was convicted of two first degree murders with special circumstances of multiple murders and commission of a murder during a robbery and burglary found to be true, and was sentenced to death.  *See* Kern County Superior Court Case No. 059675A.

On August 5, 2010, the California Supreme Court affirmed petitioner's judgment of conviction and sentence on direct appeal.  *People v. Robert Wesley Cowan*, 50 Cal. 4th 401 (2010).  The United States Supreme Court denied *certiorari* on March 28, 2011.  *Robert Wesley Cowan v. California*, 563 U.S. 905 (2011).

On June 18, 2018, the California Supreme Court discharged its habeas order to show cause directed to the Secretary of the Department of Corrections and Rehabilitation with respect to petitioner's juror misconduct claim.  *In re Cowan*, 5 Cal. 5th 235, 249 (2018).

On May 15, 2019, the state supreme court summarily denied petitioner's state habeas petition.  *In re Cowan*, Case No. S158073.

On May 28, 2019, petitioner commenced this federal habeas proceeding pursuant to 28 U.S.C. § 2254 by filing *pro se* requests for *in forma pauperis* status, appointment of counsel, and a stay of execution.

On May 29, 2019, the court granted petitioner's requests to proceed *in forma pauperis* and for appointment of counsel, and denied without prejudice his request for execution stay.

/////

1       On June 6, 2019, the court adopted the recommendation of the Selection Board for the

2   Eastern District of California and appointed the Office of Federal Defender as sole counsel

3   representing petitioner in this federal habeas proceeding.

4       On August 13, 2020, petitioner filed a 424-page federal protective petition for federal

5   habeas relief, asserting therein 24 claims for relief, including subclaims, supported by 10 exhibits.

6       On November 5, 2021, petitioner filed the operative 414-page amended federal petition for

7   writ of habeas corpus asserting 24 claims for relief including subclaims, supported by 15 exhibits.

8                  II. DISCUSSION

9     A.    Exhaustion Status of the Federal Amended Petition

10       A federal court may not grant habeas relief until the petitioner has exhausted available state

11  remedies with respect to each claim.  28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 272

12  (1971).  The exhaustion doctrine rests on principles of comity and federalism.  *Rose v. Lundy*, 455

13  U.S. 509, 515 (1982).  Exhaustion serves to: (i) protect the state court's role in the enforcement of

14  federal law, (ii) prevent disruption of state court proceedings, and (iii) reduce piecemeal litigation.

15  *Id.* at 518–20.  Federal habeas review under 28 U.S.C. § 2254(d)(1) is limited to the record that

16  was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S.

17  170, 180-81 (2011) (concluding that the district court had erred in considering evidence introduced

18  for first time in federal court).

19       A federal constitutional claim is exhausted when it has been "fairly presented" to the highest

20  state court and that court has had a meaningful opportunity to apply controlling legal principles to

21  the facts underlying the claim.  *Picard*, 404 U.S., at 275–77.  A claim has been "fairly presented"

22  if the petitioner described in state court both the legal theories and the operative facts on which he

23  bases the claim.  *Id.* at 277–78; *accord Crotts v. Smith*, 73 F.3d 861, 865 (9th Cir. 1995), *superseded*

24  *by statute on other grounds as stated in Zapata v. Vasquez*, 788 F.3d 1106, (9th Cir. 2015)).  To be

25  fairly presented a claim must also be raised in the petition itself, an accompanying brief, or another

26  similar document filed with the state court.  *Gentry v. Sinclair*, 705 F.3d 884, 897-98 (9th Cir.

27  2013).

28  */////*

To fairly present the legal theory of a claim, a petitioner must alert the state court that he is asserting a federal constitutional claim, either by citing the constitutional provision on which he relies or otherwise advising the court of the claim's federal basis. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (the petitioner failed to fairly present Fourteenth Amendment due process claim when he alleged only that prejudice outweighed the probative value of the admitted evidence); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) (the petitioner did not fairly present a Fourteenth Amendment due process claim by asserting that the admission of prior act evidence "infringed on his right to present a defense and receive a fair trial"); *Picard*, 404 U.S. at 277-78 (a petitioner must present the state courts with same claim he urges upon the federal courts); *Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (the petitioner did not fairly present an ineffective assistance of appellate counsel claim when he did not explicitly include those words, cite the relevant federal constitutional provisions, or otherwise cite to cases showing he was asserting such a federal claim); *Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2004) (the petitioner did not give the state appellate court a fair opportunity to rule on a federal due process claim by concluding his brief with the "scattershot citation of federal constitutional provisions" with no articulation of a federal legal theory for relief).

The factual basis of a claim has been found to be fairly presented as long as the facts subsequently alleged in federal court do not: (i) fundamentally alter the nature of the claim presented to the state court, (ii) place the claim in a significantly different and stronger evidentiary posture than it was when the state courts considered it, or (iii) substantially improve the evidentiary basis of the claim. *See e.g., Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *accord Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994), *superseded by statute on other grounds as stated in Hall v. City of Los Angeles*, 697 F.3d 1059, 1070 (9th Cir. 2012); *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988).

Generally, a petitioner may add factual materials supportive of the factual basis already in the record without fundamentally altering his claim and rendering it unexhausted. *See e.g., Vasquez*, 474 U.S., at 260 (a statistical analyses of facts already in record does not render a claim unexhausted); *Chacon*, 36 F.3d, at 1468 (the factual basis of a claim that an interpreter mistranslated guilty plea proceedings was fairly presented where the state court understood that the

accuracy of the translation to be at issue).  However, if new facts substantially improve the claim, for example by contradicting evidence the state court already considered, then the new factual materials must be presented to the state court.  *See e.g., Aiken*, 841 F.2d, at 883-84 & n.3 (new evidence consisting of decibel level studies of a tape recording of petitioner's confession, which conflicted with evidence that the state court had considered, substantially improved the evidentiary posture of claim and required exhaustion); *Dickens v. Ryan*, 740 F.3d 1302, 1317-18 (9th Cir. 2014) (new allegations regarding petitioner's fetal alcohol syndrome and organic brain damage in support of an ineffective assistance of counsel claim substantially improved the evidentiary posture of the claim and required exhaustion).

Of course, exhaustion may be excused where it would be futile.  28 U.S.C. § 2254(b)(1).  Section 2254 provides two exceptions to the exhaustion requirement, i.e. where there is "an absence of available State corrective process," or where "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(i-ii); *see e.g., Edelbacher v. Calderon*, 160 F.3d 582, 585 (9th Cir. 1998) (exhaustion is required absent an ineffective state process or other extraordinary circumstances showing futility); *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981) (the exhaustion requirement may be avoided by showing that it would be futile in light of prevailing decisions of highest state court).

Here, the parties dispute the exhaustion status of petitioner's Claims/Subclaims 1.C, 3.E, 7, and 11.  (Doc. No. 52 at 2, 7.)[3]  For the reasons explained below, the court concludes that of these, only petitioner's Subclaim 1.C is unexhausted,.

1.      Subclaim 1.C

In his Subclaim 1.C, petitioner alleges that his trial counsel's numerous instances of deficient performance at the guilt phase of his trial as alleged in his Subclaims 1.B.1 through 1.B.8, considered cumulatively, were prejudicial at both the guilt and penalty phases of his trial, violating petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (Doc. No. 41 at 83, 104-16, citing *Strickland v. Washington*, 466 U.S. 668 (1984).)

---

[3]  The parties have stipulated that Claims/Subclaims 1.B.2, 2.D, 2.E, 3.B, 3.K, and 24 are unexhausted, and that the uncontested Claims/Subclaims are exhausted.  (Doc. No. 52 at 2, 7.)

Respondent argues that Subclaim 1.C is unexhausted because it incorporates petitioner's concededly unexhausted Subclaim 1.B.2., in which he alleges (1) that his trial counsel deficiently failed to elicit testimony at trial from prosecution witness Danny Phinney regarding the alleged alteration of the barrel of the gun implicated in the killing of Mr. Mercks, and (2) that absent this allegedly deficient performance there is a reasonable probability that criminalist Greg Laskowski's identification of the gun as the murder weapon in his trial testimony would have been impeached. (Doc. No. 52 at 6, citing *Ybarra v. McDaniel*, 2004 WL 7323457, at *18 (D. Nev., July 27, 2004) (a claim or ground that logically depends on some other claim or ground is exhausted only insofar as that other claim or ground is viable and exhausted).)

Petitioner responds that Subclaim 1.C nonetheless is exhausted because it incorporates his concededly exhausted Subclaim 1.B.1, in which he alleges (1) that his trial counsel was deficient by failing to present expert evidence that Laskowski's use of a Mikrosil casting to match the gun barrel to spent bullets from the crime scene was an unreliable new scientific technique, and (2) that absent this allegedly deficient conduct there is a reasonable probability that Laskowski's unreliable firearm identification would have been excluded from evidence at petitioner's trial.  (Doc. No. 52 at 2, 8-9; *see also* Doc. No. 41 at 90-92; Doc. No. 41-12; Doc. No. 41-14; Doc. No. 16-49 at 217; Doc. No. 16-77 at 73, 78-82, 87-89; Doc. No. 16-89 at 47-52.)  In petitioner's view, his Subclaim 1.C is exhausted notwithstanding its incorporation of unexhausted Subclaim 1.B.2 because exhausted Subclaim 1.B.1 raised prejudice identical to that raised by Subclaim 1.B.2.

The court concludes that Subclaim 1.C is unexhausted because it includes unexhausted Subclaim 1.B.2 the factual predicate of which was not presented to the state courts for their consideration.  *See Strickland*, 466 U.S., at 694 (the test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.")  The court finds that counsel's unprofessional errors alleged in his unexhausted Subclaim 1.B.2 are distinct from, and not cumulative or supplementary of, the unprofessional errors by petitioner's trial counsel alleged by petitioner in his exhausted Subclaim 1.B.1.

/////

In his Subclaim 1.B.2, petitioner alleges that his trial counsel erroneously failed to impeach prosecution witness Laskowski's conclusion that the spent bullets matched unaltered portions of the gun barrel with  testimony from trial witness Phinney that the entire gun barrel had altered riffling.  (*See* Doc. No. 41 at 90-92.  Phinney's unelicited testimony relates to whether the spent bullets could be matched to riffling in the gun barrel by any forensic means.  Even if the Mikrosil technique was reliable as the state court found, Laskowski's identification of the handgun as the murder weapon might still have been impeached by testimony from Phinney as now proffered by petitioner that was not presented by his counsel at petitioner's trial.

By contrast, petitioner alleges in his Subclaim 1.B..1 that his trial counsel erred in failing to object to prosecution expert witness Laskowski's reliance upon and use of an unreliable scientific technique to match the spent bullets to the gun barrel, i.e. comparing the spent bullets to a rubberized Mikrosil cast of the gun's barrel.  (Doc. No. 41 at 83-90 citing *People v. Kelly*, 17 Cal. 3d 24 (1976), *superseded by statute as stated in People v. Wilkinson*, 33 Cal. 4th 821 (2004); *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), *superseded by rule as stated in Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (hereinafter collectively "*Kelly-Frye*"); *see also* Doc. No. 16-83 at 40-47.)  Petitioner's claim in this regard relates to whether the Mikrosil technique was a reliable and acceptable scientific means to match the spent bullets to riffling in the gun barrel. Even if it was, Laskowski's identification of the gun as the murder weapon might still have been impeached by Phinney's now proffered testimony that was not presented at trial.

Notably,  Laskowski conceded at an evidentiary hearing conducted outside the presence of the jury, that an alteration of the barrel such as Phinney related to detective Christopherson would have made it difficult to accurately compare the gun with the known bullets.  (Doc. No. 16-77 at 227-28 citing RT 2131); *see also Cowan*, 50 Cal. 4th, at 471 (observing that a comparison of test fired bullets with the bullets removed from Mr. Mercks body was not before the trial court).

Given the differing factual predicates underlying the deficient performance of petitioner's trial counsel as alleged in Subclaims 1.B.1 and 1.B.2, and based upon the facts and evidence now before this court, at this early stage of these proceedings the undersigned is not persuaded by petitioner's argument that the prejudice raised by these Subclaims is identical.  Of course, the

California Supreme Court did not consider the potential cumulative prejudicial effect of Phinney's unpresented testimony regarding the extent of altered riffling in the gun barrel.  (*See* Doc. No. 41 at 104-16, 126-29; *Cowan*, 50 Cal. 4th, at 468-71; *see also* Doc. No. 16-49 at 215-31; Doc. No. 16-77 at 227-35; Doc. 16-83 at 28-29, 40-47; Doc. 16-84 at 85-90.)  Petitioner has not demonstrated that the California Supreme Court's consideration of the reliability of the Mikrosil technique under the *Kelly-Frye* standard (*see Kelly*, 17 Cal.3d, at 30, *quoting Frye*, 293 F., at 1014), suggests otherwise.  *See Ross v. Davis*, 22 F.4th 1028, 1058 (9th Cir. 2022) (citing *Andrews v. Davis*, 944 F.3d 1092, 1106 (2019)) ("*Strickland*'s two prongs serve separate purposes," with the deficiency analysis focused on "counsel's adherence to reasonable professional standards, while prejudice looks to the weight of the available evidence and its effect on the case.").

For these reasons, the court also is unpersuaded by petitioner's suggestion that his allegations in support of the noted unexhausted Subclaim 1.B.2 merely provide "additional evidentiary support" for otherwise exhausted cumulative prejudice allegations set forth in his Subclaim 1.C. (Doc. No. 52 at 8 citing *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006), *vacated by Landrigan v. Schriro*, 501 F.3d 1147 (2007); *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007). Unlike the situations confronted in *Landrigan* and *Lopez*, where the petitioners' presentation of additional evidence supporting the prejudice prong of an ineffective assistance of counsel claim did not render unexhausted the ineffective assistance claim presented in state court stemming from an alleged deficient mitigation investigation, here trial counsel's alleged deficient failure to develop and present Phinney's testimony was not otherwise presented to the state high court.  *See Humphrey v. Cady*, 405 U.S. 504, 516 n.18 (1972) (the test is whether petitioner's new facts are "so clearly distinct" from the claim he has already presented to the state court that it may fairly be said that the state court had "no opportunity" to pass on the claim); *accord Scott v. Schriro*, 567 F.3d 573, 583 (9th Cir. 2009).

Additionally, petitioner has not demonstrated that state court exhaustion proceedings on his Subclaims 1.B.2 and 1.C would be futile and that these Subclaims should therefore be deemed exhausted.  28 U.S.C. § 2254(b)(1), (c).  Under the federal habeas statute, a claim is unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the

1    question presented." 28 U.S.C. § 2254(c).  In this case, based upon the present record before the

2    court, petitioner has not demonstrated that he lacks the right to raise the unexhausted allegations in

3    state court.  *See* 28 U.S.C. § 2254(b)(1), (c); *In re Friend,* 11 Cal. 5th 720, 739-42 (2021), *as*

4    *modified September 1, 2021* (the restrictions on successive habeas petitions promulgated in

5    Proposition 66, California's Death Penalty Reform and Savings Act of 2016 [as approved by voters,

6    Gen. Elec. (Nov. 8, 2016) § 1], do not apply to a newly available claim raised at the first

7    opportunity).[4]

8          Therefore, the court concludes that petitioner's Subclaim 1.C is unexhausted.

9          2.      Subclaim 3.E

10         In his Subclaim 3.E petitioner alleges that his trial counsel was prejudicially deficient at the

11   penalty phase of petitioner's trial by failing to present expert testimony explaining the effect of

12   physical and psychological traumas, deprivations, and developmental obstacles that thwarted

13   petitioner's development and ability to function, violating his rights under the Sixth Amendment.

14   (Doc. No. 41 at 155, 210-26, 247-51.)

15         Respondent argues that petitioner's Subclaim 3.E is unexhausted because it relies upon the

16   23-page federal habeas declaration of clinical pharmacist and addiction specialist Dr. Gantt

17   Galloway, Pharm.D., opining on the nature and causes of alcohol and drug addiction in general,

18   and petitioner's addiction in particular which, Dr. Galloway concludes, led to "impaired judgment

19   and a diminished ability to modulate his behavior."  (Doc. No. 52 at 3-5; *see also* Doc. No. 41-15

20   at 10-23.)   Respondent contends that this new evidence fundamentally alters and places in a

21   significantly different and stronger evidentiary posture petitioner's claim which he presented to the

22   state courts because that claim as presented focused merely on his trial counsel's failure to develop

23   and present psychosocial evidence of mitigating childhood trauma.  (Doc. No. 52 at 3-5 citing Doc.

24   No. 16-83 at 131-46 ; Doc. No. 41-15 at 23); *see also Dickens*, 740 F.3d, at 1318 ("A claim has not

25   been fairly presented in state court if new factual allegations either fundamentally alter the legal

26   claim already considered by the state courts, or place the case in a significantly different and

27   stronger evidentiary posture than it was when the state courts considered it.").

28   _____
     [4]  All references to state law in this order are to California law.

1    Petitioner responds that Dr. Galloway's declaration merely provides additional factual

2    support for the testimony of the mitigation experts, neuropsychologist Dr. Natasha Khazanov and

3    psychologist Dr. Samuel Jinich, offered in support of his state habeas petition that: (i) petitioner's

4    family history included multigenerational alcohol and drug abuse (Doc. No. 52 at 9-10; *see also*

5    Doc. 16-84 at 193-94, 198-200; Doc. 16-85 at 87-91), and (ii) petitioner himself suffered physical

6    and mental traumas and longtime drug and alcohol abuse and addiction which damaged his brain

7    and left him with deficits in executive functioning (*id.*; *see also* Doc. No. 16-84 at 203-06).

8    Specifically, petitioner argues that Dr. Galloway's declaration submitted in support of the petition

9    before this federal court merely supplements the experts' testimony that was presented in the state

10   courts with additional facts regarding the effects of petitioner's drugs of choice, i.e.

11   methamphetamines, heroin, and alcohol.  (Doc. No. 52 at 9-10; *see also* Doc. No. 42 at 10-11.)

12   The court concludes that petitioner's Subclaim 3.E is exhausted because Dr. Galloway's

13   declaration provides expert testimony with respect to petitioner's mitigating drug and alcohol

14   addiction and resultant brain damage and cognitive impairment that is simply in addition to, and

15   not transformative of, the evidence presented by petitioner in support of his state habeas petition

16   by way of the expert opinions noted above.

17   Petitioner raised the operative facts and federal legal theory for habeas relief underlying his

18   Subclaim 3.E in state court.  He claimed in his state habeas petition that penalty phase counsel was

19   ineffective by failing to present expert testimony regarding his heavy addiction to

20   methamphetamine (Doc. No. 16-83 at 131-35, 143-44), and the resultant  "cerebral deficits" that

21   he contends impaired his executive functioning, self-regulation, and ability to self-monitor his

22   behavior (Doc. No. 16-83 at 144; *see also* Doc. No. 16-84 at 168).  Petitioner also claimed in his

23   state petition that he was ineligible for execution due to brain damage caused by his long-term

24   addiction to methamphetamine.  (Doc. No. 16-83 at 214.)

25   The state court record otherwise provided support for these allegations with evidence of

26   petitioner's addiction to alcohol and methamphetamine.  (*See e.g.* Doc. 16-84 at 168; Doc. 16-85

27   at 26.)  Petitioner's experts in his state habeas proceedings, Drs. Khazanov and Jinich, opined that

28   petitioner suffered "long-term alcohol and polysubstance abuse, beginning at a very early age"

(Doc. No. 16-83 at 82-83), along with "long standing addiction to alcohol and drugs" including possible "cortical atrophy of brain tissue which can result in a range of debilitating and irreversible impairments, including severe memory loss, mental inflexibility, learning deficits or exacerbation of pre-existing deficits, and a marked tendency to perseverate." *(Id.;* Doc. No. 16-83 at 117-18; *see also* Doc. No. 16-84 at 193-94, 199-200, 202-06; Doc. No. 16-85 at 26, 87-91.)  Dr. Jinich further concluded that petitioner suffered possible brain impairment from his substance abuse and dependence that impacted his executive functioning.  (Doc. No. 16-85 at 91, 99, 109-10.)  Notably, Dr. Khazanov referred to and discounted petitioner's 1995 electroencephalogram results and the "normal" finding they reflected, deeming the procedure "notoriously insensitive to many brain disorders[.]"  (Doc. No. 16-84 at 189.)

Dr. Galloway's testimony readily appears to supplement the noted state court record with evidence that petitioner was unequivocally a drug addict, and that drug and alcohol addiction is a disease with a critical biological component that causes impaired judgment and loss of behavioral control.  (*See* Doc. No. 41 at 224); *see also Vasquez*, 474 U.S., at 260 ("[S]upplemental evidence presented by respondent did not fundamentally alter the legal claim already considered by the state courts, and, therefore, did not require that respondent be remitted to state court for consideration of that evidence.").

In his declaration submitted in this federal habeas proceeding Dr. Galloway recounts his expertise in substance abuse and addiction, particularly as to the substances of alcohol and methamphetamine.  (Doc. No. 41-15 at 2-4.)  He has declared that he was retained to opine on petitioner's alcohol and drug use and its effect on behavior and functioning.  (*Id.* at 4.)  He also declared that petitioner was at increased risk of addition due to his family history, adverse childhood experiences, early exposure to alcohol, and few extant protective factors.  (*Id.* at 12.)  He attested that petitioner became addicted to alcohol and amphetamines before adulthood, and that these addictions left him with impaired judgment and diminished ability to modulate his behavior.  (*Id.* at 22-23.)  Finally, Dr. Galloway has declared that petitioner's other mental health issues, as reported by Drs. Jinich and Khaznov, and a lack of treatment combined to keep petitioner from overcoming his addictions.  (*Id.* at 23.)

1    Ultimately, as noted above, the test to be applied by the court in resolving the exhaustion

2    issue is whether petitioner's claim is "so clearly distinct" from the claim he has already presented

3    to the state court that it may fairly be said that the state court had "no opportunity to pass on the

4    claim." *Humphrey*, 405 U.S., at 516, n.18.  For the reasons stated above, this court finds that the

5    state court was presented with the opportunity to pass on petitioner's Subclaim 3.E, and did

6    consider and summarily deny on the merits petitioner's claim that his trial counsel provided him

7    with prejudicially ineffective assistance of counsel at the penalty phase of his trial based upon these

8    contested allegations.  (*See* Doc. No. 16-83, at AGO-011835-50; Doc. No. 16-102; *see also* 28

9    U.S.C. § 2254(b)(1); *Scott*, 567 F.3d, at 583.

10    For these reasons, the court concludes that petitioner's Subclaim 3.E has been properly

11    exhausted.

12        3.    Subclaim 3.K

13    In his Subclaim 3.K petitioner alleges that his trial counsel's numerous instances of deficient

14    performance at the penalty phase of his trial, considered cumulatively, were prejudicial, thereby

15    violating his rights under the Sixth Amendment.  (Doc. No. 41 at 247-51.)

16    The parties have stipulated that petitioner's Subclaim 3.K is unexhausted to the extent it

17    relies upon a claim of prejudice stemming from petitioner's concededly unexhausted Subclaim 3.B.

18    (Doc. No. 52 at 2, 7); *see also Ybarra*, 2004 WL 7323457, at *18; *Strickland*, 466 U.S., at 691-92.

19    Based upon the parties' stipulation, the court finds that the state courts were not presented

20    with the opportunity to consider the alleged cumulative prejudice petitioner now contends arises

21    from his concededly unexhausted Subclaim 3.B.  28 U.S.C. § 2254(b)(1); *Scott*, 567 F.3d, at 583.

22    Additionally, petitioner has not demonstrated that state court exhaustion proceedings with

23    respect to his Subclaims 3.B and 3.K would be futile and that those Subclaims should therefore be

24    deemed exhausted by this court.  28 U.S.C. § 2254(b)(1), (c); *see also* discussion of Subclaim 3.B

25    in context of a *Rhines* stay and abeyance, *post*.)  As noted above, a claim is unexhausted if petitioner

26    "has the right under the law of the State to raise, by any available procedure, the question

27    presented."  28 U.S.C. § 2254(c).  In this case, petitioner has not demonstrated on the record before

28    this court, that he lacks the right to raise these unexhausted allegations in state court.  *See* 28 U.S.C.

§ 2254(b)(1), (c); *Friend,* 11 Cal. 5th, at 739-42.  Instead, petitioner concedes the matter, at least implicitly, by arguing that this court should stay this federal habeas proceeding pending state court exhaustion proceedings on his Subclaim 3.B.  (*See* Doc. No. 42 at 9-10, 15-16, 18.)

Therefore, the court concludes that Subclaim 3.K is unexhausted.

4.     Claim 7

In petitioner's Claim 7 he alleges that the state trial court erred by admitting into evidence at trial prosecution witness Emma Foreman's out-of-court statement to a police officer, that petitioner told her he killed two old people in Bakersfield, and in erroneously admitting that evidence violated his confrontation and due process rights under the Sixth and Fourteenth Amendments.  (Doc. No. 41 at 300-09, citing *Crawford v. Washington*, 541 U.S. 36, 50-51, 68 (2004) (out-of-court, testimonial statements are inadmissible unless the declarant is unavailable and defendant had a prior opportunity to cross-examine the witness); *see also* Doc. No. 16-77 at 149-50, 193-94; Doc. No. 16-83 at 28; *Estelle v. McGuire*, 502 U.S. 62, 70 (1991) ("[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.").

Respondent argues that petitioner's Claim 7 is unexhausted because in state court, petitioner did not cite or raise the decision in *Crawford,* or the principles announced therein, as a basis for relief.  (Doc. No. 52 at 5, citing Doc. 16-77 at 197-98; *see also* Doc. No 16-83 at 51-52.) Respondent argues that, as a result, the state court was not provided the opportunity "to pass upon and correct" this alleged violation of petitioner's federal constitutional rights.  (Doc. No. 52 at 5, citing *Fields v. Waddington*, 401 F.3d 1018, 1020-22 (9th Cir. 2005) (the state court must have the opportunity to pass upon clearly identified federal issues; reference to broad constitutional principles is insufficient to establish exhaustion).

Petitioner responds that his Claim 7 is exhausted because the California Supreme Court, on direct appeal, considered and cited the decision in *Crawford* in finding that the admission of Forman's out-of-court statement did not violate the Sixth Amendment.  (Doc. No. 52 at 10, citing Doc. 16-77 at 193); *Cowan*, 50 Cal. 4th, at 463 (citing *Crawford*, 541 U.S. 36, 59 & n.9). Particularly, petitioner suggests that the state supreme court found no *Crawford* rule issue to have been presented under the facts of this case because, according to that court,  petitioner was free to

13

recall and cross-examine Foreman about the discrepancy between her trial testimony and her earlier out-of-court statement given to Shafter Police Lieutenant Porter. (*See Cowan*, 50 Cal. 4th at 463.) Petitioner's argues that he need not have re-presented the legal theory underlying this claim for relief. (Doc. No. 52 at 10 citing *Castille v. Peoples*, 489 U.S. 346, 350 (1989) ("[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review."); *Ybarra v. McDaniel*, 656 F.3d 984, 991 (9th Cir. 2011) (a claim is exhausted where the state court has in fact ruled on its merits).

This court concludes that petitioner's Claim 7 has been properly exhausted because petitioner fairly presented the California Supreme Court with his claim that the admission into evidence at his trial of Foreman's pretrial statement to Lieutenant Porter denied petitioner his confrontation rights as guaranteed by the Sixth and Fourteenth Amendments, and that court specifically considered that claim of constitutional error under the rule of *Crawford* in affirming petitioner's judgment of conviction on direct appeal, as discussed below. *Picard*, 404 U.S., at 275–77.

In his state post-conviction proceedings, petitioner specifically invoked his Confrontation Clause rights under the Sixth Amendment. On direct appeal, petitioner claimed that Foreman's prior statement was inadmissible hearsay, and that the erroneous admission of Forman's prior statement into evidence at his trial violated his due process rights under the Fourteenth Amendment, and his confrontation right under the Sixth and Fourteenth Amendments as well as article I section 15 of the California Constitution. (Doc. No. 16-77 at 193-98, 204 citing *California v. Green,* 399 U.S. 149, 158 (1970) (finding that the Confrontation Clause was not violated by admission of declarant's out-of-court statements where the declarant is testifying as a witness at trial and is subject to full and effective cross-examination). Although petitioner did not specifically refer to the decision in *Crawford* in his opening brief on direct appeal in state court, he did in that brief present arguments implicating the principles underlying the decision in *Crawford* by arguing that Foreman's statement was unconfronted because she was effectively unavailable for cross-examination at his trial. (*Id.*; *see also* Doc. No. 16-77 at 220, where petitioner argued on direct

1  appeal that the admission of witness Phinney's unconfronted hearsay statements similarly violated

2  the holding in *Crawford*; Doc. No. 16-79 at 80-81 (same).)

3         Moreover, in his state habeas proceeding petitioner claimed that his trial counsel erred by

4  objecting to the admission of Foreman's out-of-court statement only as state law hearsay, and not

5  on grounds  that the "admission of Foreman's extrajudicial statement violated petitioner's right to

6  confrontation under the Sixth Amendment and his right to due process under the Fourteenth

7  Amendment."   (*See* Doc. No. 16-83 at 51-52, citing Doc. No. 16-84 at 35.)  In his reply (to the

8  informal response) in support of his state habeas petition, petitioner specifically cited to the decision

9  in *Crawford* in arguing that the admission into evidence of Foreman's pretrial statement constituted

10 error.  (*See* Doc. No. 16-89 at 54-56.)

11        Furthermore, the California Supreme Court was certainly aware that:

12              Under the Sixth Amendment, "[i]n all criminal prosecutions, the
                accused shall enjoy the right ... to be confronted with the witnesses
13              against him." U.S. Const. amend. VI.  This confrontation right applies
                to the States through the Fourteenth Amendment.  *Pointer v. Texas,*
14              380 U.S. 400, 403, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965).   A
                defendant's right to cross-examine the witnesses brought against him
15              is a fundamental right under the Confrontation Clause.  *Id*

16 *Darby v. Ramirez-Palmer*, No. C 02-1119 CW, 2007 WL 1345223, at *4 (N.D. Cal. May 8, 2007),

17 *aff'd*, 323 F. App'x 567 (9th Cir. 2009); *see also Gray v. Montgomery*, No. SACV15313VBFGJS,

18 2018 WL 7889825, at *15 (C.D. Cal. Sept. 11, 2018), *report and recommendation adopted*, No.

19 SACV171500313VBFGJS, 2019 WL 1405549 (C.D. Cal. Mar. 26, 2019) citing *Woodford v.*

20 *Visciotti*, 123 S. Ct. 357, 360 (2002) ("There is a presumption that state courts know and follow the

21 law[.]")

22        The California Supreme Court also presumably was aware that the decision in *Crawford*

23 applied to petitioner's case.  In *Crawford,* decided on March 8, 2004, the United States Supreme

24 Court announced a "new rule" for purposes of *Teague* analysis and petitioner's conviction was still

25 pending on direct review.  *See Jaffe v. Brown*, No. 05-CV-04439-PJH, 2015 WL 5569135, at *6

26 (N.D. Cal. Sept. 21, 2015) (citing *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("a new rule is

27 generally applicable only to cases that are still on direct review") (applying *Teague v. Lane*, 489

28 U.S. 288, 310-316 (1989).

1   The record in this case reflects that the California Supreme Court considered and applied the

2   clearly established post-*Crawford* federal law in the course of its evaluation of whether the

3   admission of Foreman's out-of-court statement into evidence at trial denied petitioner his  right to

4   confrontation.  *Picard*, 404 U.S., at 275–77.

5   As discussed above, the test this court must apply in making the exhaustion determination is

6   whether petitioner's claim is "so clearly distinct" from the claim he presented to the state court that

7   it may fairly be said that the state court had "no opportunity" to pass on the claim.  *Humphrey*, 405

8   U.S., at 516, n.18.  For the reasons stated above, the court concludes the state court had the

9   opportunity to and did in fact rule on petitioner's claim that the trial court erred by admitting the

10  pretrial statement of Foreman into evidence at trial in violation of the Sixth Amendment

11  Confrontation Clause and the clearly established rule announced in *Crawford*.  *See Cowan*, 50 Cal.

12  4th, at 461-64; *see also* 28 U.S.C. § 2254(b)(1); *Scott*, 567 F.3d, at 583.

13  Therefore, the court finds that petitioner's Claim 7 has been properly exhausted.

14  5.   Claim 11

15  In his Claim 11 petitioner alleges that the trial court erred by admitting in the guilt phase of

16  his trial the irrelevant testimony by Mitzi Culbertson that petitioner's brother, Gerald Cowan, was

17  in possession of $200 possibly taken from victim Russell pursuant to a conspiracy with petitioner

18  to rob and kill Russel.  (Doc. No. 41 at 330-34; *see also* Doc. No. 16-77 at 98-99.)  Petitioner also

19  contends that the jury improperly relied upon that erroneously admitted testimony as aggravating

20  evidence in its sentencing determination on the Mercks' murders, thereby violating petitioner's

21  rights under the Eighth and Fourteenth Amendments.  (*Id.*)

22  Respondent argues that petitioner's Claim 11 is unexhausted because in state court,

23  petitioner did not raise as a basis for relief a claim that the trial court erroneously admitted

24  Culberston's testimony as aggravating evidence at the penalty phase of petitioner's trial, following

25  his conviction of the Mercks' murders.[5]  (Doc. No. 52 at 6.)  Respondent argues that petitioner's

26  claim as presented in state court asserted only that Culbertson's testimony was irrelevant at the

27  [5]  The jury at petitioner's trial deadlocked on the count charging him with the murder of Jewell

28  Russell, and the trial court declared a mistrial as to that count.  (Doc. No. 41 at 333, citing Doc. 16-59, at  161-68.)

1   guilt phase of the trial and should have been excluded.  (*Id.*)

2          Petitioner responds that his Claim 11 is exhausted because, on direct appeal, the California

3   Supreme Court considered and rejected:  (1) his argument that Culbertson's guilt phase testimony

4   was erroneously admitted at the penalty phase (Doc. No. 52 at 10-11; *see also* Doc. No. 41 at 332-

5   34 citing Doc. No. 16-77 at 269-71; *Cowan*, 50 Cal. 4th, at 481-83), and (2) the allegation of trial

6   court error and ineffective assistance of counsel arising from the trial court's failure to instruct the

7   jury at the penalty phase of petitioner's trial that the Russell murder could not be considered as

8   aggravating "other crimes" evidence unless it was proven beyond a reasonable doubt that petitioner

9   murdered Russell.  (*See* Doc. No. 16-77 at 286-93; *see also* Doc. No. 16-79 at 125-29; *Cowan*, 50

10  Cal. 4th, at 487-93; *cf.* Doc. No. 16-78 at 204-05.)

11         The court finds that petitioner's Claim 11 is exhausted because petitioner fairly presented to

12  the California Supreme Court his claim that the trial court erroneously admitted Culbertson's

13  irrelevant testimony at the penalty phase of his trial, thereby violating his rights under the Eighth

14  and Fourteenth Amendments.  *Picard*, 404 U.S., at 275–77.  Notably, petitioner alleged in state

15  court that his trial counsel provided him ineffective assistance by: (i) failing to object to the

16  admission of Culbertson's testimony at trial on the grounds it was irrelevant and violated both his

17  Eighth Amendment right to a reliable penalty determination and his due process right to a fair trial

18  (*see* Doc. No. 16-83 at 54-55), and (ii) failing to request that the jury be instructed that the Russell

19  murder could not be considered in aggravation unless proven beyond a reasonable doubt (Doc. No.

20  16-83 at 160-61; Doc. No. 16-89 at 94-96; *see also* Doc. No. 41 at 357-61; Doc. No. 52 at 2

21  [regarding the concededly exhausted Claim 15 allegations of trial court error in failing to instruct

22  the penalty phase jury at petitioner's trial that it could not consider the Russell killing].)

23         As stated above, the test to be applied in determining if a habeas claim has been exhausted

24  is whether petitioner's claim is "so clearly distinct" from the claim he has already presented to the

25  state court that it may fairly be said that the state court had "no opportunity" to pass on the claim.

26  Humphrey, 405 U.S., at 516, n.18.  For the reasons stated, the court finds that here the state court

27  did have the opportunity to pass on petitioner's contested allegations that the trial court erred by

28  admitting Culbertson's allegedly irrelevant testimony at the penalty phase of petitioner's trial,

1   thereby violating his rights under the Eighth and Fourteenth Amendments. See *Cowan*, 50 Cal.

2   4th at 481-83; see also 28 U.S.C. § 2254(b)(1); *Scott*, 567 F.3d, at 583.

3          Therefore, the court concludes that petitioner's Claim 11 is properly exhausted.

4          6.      Claim 24

5          In his Claim 24 petitioner alleges that his trial counsel's numerous instances of deficient

6   performance at both the guilt and penalty phases of his trial, considered cumulatively, were

7   prejudicial, violating petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth

8   Amendments. (Doc. No. 41 at 411-12, citing Doc. No. 16-77 at 370; Doc. No. 16-83 at 177-80.)

9          The parties have stipulated that petitioner's Claim 24 is unexhausted to the extent it relies

10  upon alleged prejudice stemming from petitioner's unexhausted Claims and Subclaims. (Doc. No.

11  52 at 2, 7); *see also Ybarra*, 2004 WL 7323457, at *18; *Strickland*, 466 U.S., at 691-92.

12         The court finds that the state court did not have the opportunity to pass on the alleged

13  cumulative prejudice arising from the noted unexhausted Subclaims in which petitioner has alleged

14  that he received ineffective assistance of counsel at his trial. 28 U.S.C. § 2254(b)(1); *Scott*, 567

15  F.3d, at 583; *see also Wooten v. Kirkland*, 540 F.3d 1019, 1025-26 (9th Cir. 2008) (stand-alone

16  cumulative error claim must be exhausted); *accord Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir.

17  2000); *Ybarra,* 2004 WL 7323457, at *18.

18         Additionally, petitioner has not demonstrated that state court exhaustion proceedings with

19  respect to his Claim 24 and the unexhausted Subclaims would be futile, such that these

20  Claims/Subclaims should nonetheless be deemed exhausted. 28 U.S.C. § 2254(b)(1), (c). As

21  discussed above, a claim presented on federal habeas is unexhausted if the petitioner "has the right

22  under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C.

23  § 2254(c). In this case, petitioner has not shown on the present record, that he lacks the right to

24  raise the unexhausted allegations in state court. *See* 28 U.S.C. § 2254(b)(1), (c); *Friend*, 11 Cal.

25  5th, at 739-42.

26         Therefore, the court concludes that petitioner's Claim 24 is unexhausted.

27  /////

28  /////

B.      Stay and Abeyance of the Federal Amended Petition

As noted at the outset, a federal court will not grant a state prisoner's application for a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1).  A petitioner satisfies the exhaustion requirement by fairly presenting to the highest state court all federal claims before presenting those claims for relief to the federal court.  *Reese,* 541 U.S., at 29; *Wooten,* 540 F.3d, at 1025.

Stay and abeyance of a federal habeas petition that includes both exhausted and unexhausted claims is appropriate in "limited circumstances" where (1) "the petitioner has good cause for his failure to exhaust," (2) "his unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Rhines,* 544 U.S., at 277-78.  Such a stay allows state courts the first opportunity to consider and address a state prisoner's habeas corpus claims.  *Rhines,* 544 U.S., at 273–74 (citing *Lundy,* 455 U.S., at 518-19); *see also King v. Ryan,* 564 F.3d 1133, 1138 (9th Cir. 2009) ("Habeas petitioners have long been required to adjudicate their claims in state court - that is, 'exhaust' them before seeking relief in federal court.").

"Good cause" in the context of a *Rhines* stay turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify the failure to exhaust.  *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 416-17 (2005) (reasonable confusion regarding the timeliness of a state filing ordinarily constitutes good cause); *Blake v. Baker,* 745 F.3d 977, 982 (9th Cir. 2014) ("legitimate reason" for the failure to exhaust satisfies the equitable "good cause" element of the *Rhines* test).

In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of a claim unless "it is perfectly clear that the petitioner has no hope of prevailing."  *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted."  *Id.* (citing *Lundy*, 455 U.S., at 515).

The Ninth Circuit Court of Appeals has observed that:

The caselaw concerning what constitutes "good cause" under *Rhines* has not been developed in great detail. *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.").

\* \* \*

We do know, however, that a petitioner has been found to demonstrate "good cause" where he meets the good cause standard announced in *Martinez v. Ryan*, 566 U.S. 1 (2012). *Blake*, 745 F.3d at 983–84. *Martinez* carved out an exception to the general rule, stated in *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), that "ignorance or inadvertence" on the part of a petitioner's post-conviction counsel does not constitute cause to excuse a procedural default of a claim. Specifically, the *Martinez* Court concluded that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S. Ct. at 1320.

In *Blake*, we concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause "was not a bare allegation of state post-conviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence." *Blake*, 745 F.3d at 983. The court further observed that "good cause under *Rhines*, when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default." *Id.* at 983–84. We emphasized, in response to the idea that ineffective assistance of post-conviction counsel could always be raised, that *Rhines's* requirement that claims not be plainly meritless and that the petitioner not engage in dilatory litigation tactics "are designed ... to ensure that the *Rhines* stay and abeyance is not . . . available in virtually every case," *id.* at 982.

*Dixon v. Baker*, 847 F.3d 714, 720-21 (9th Cir. 2017).

The decision whether to grant a *Rhines* stay is subject to the discretion of the district court. *Rhine*s, 544 U.S. at 276; *see also Jackson*, 425 F.3d, at 661 (when the three *Rhines* factors are satisfied, however, "it likely would be an abuse of discretion for a district court to deny a stay[.]").

Here, petitioner moves the court to stay this federal habeas proceeding and hold it in abeyance for a reasonable time so that he may present the state courts with the following unexhausted Claims:[6]

---

[6]  To the extent petitioner might seek to augment concededly exhausted Subclaims 1.B.7 and 3.E (*see* Doc. No. 42 at 10-12), such relief is premature, and not properly before the court at this time. *See Pinholster*, 563 U.S. at 180-81.

Subclaim 1.B.2: Alleging ineffective assistance of trial counsel at the guilt phase by failure to elicit information from Danny Phinney regarding alteration of the handgun barrel in order to impeach criminalist Greg Laskowski - violating rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Subclaims 2.D and 2.E: Alleging presentation of false and unreliable scientific evidence of fingerprint identification and firearms toolmark identification at trial, in light of new scientific studies and research regarding feature comparison methods - violating rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Subclaim 3.B: Alleging ineffective assistance of trial counsel at the penalty phase by failure to challenge the constitutionality of an invalid 1970 conviction for robbery, including counsel's related conflict of interest, and the prosecutor's related failure to disclose the invalidity of the conviction - violating rights under the Sixth, Eighth, and Fourteenth Amendments.

(Doc. No. 42 at 8-10); *see also Friend,* 11 Cal. 5th, at 739-41.

Petitioner argues that newly discovered legal and factual grounds, and ineffective assistance provided by his state habeas counsel, provide good cause for his failure to exhaust these Subclaims. (Doc. No. 42 at 13-16.)  He also argues the Subclaims are supported by his evidentiary proffer and clearly established federal law, and are therefore colorable.  (*Id.*, at 17-18.)

Respondent opposes petitioner's motion, arguing that petitioner is not entitled to a stay under *Rhines* because he has not shown good cause for his failure to exhaust his new, potentially meritorious claims.  (Doc. No. 45 at 6-11.)

Petitioner replies by pointing to his argument in support of the motion (Doc. No. 46 at 2-9), and by observing that respondent appears to concede the absence of any intentionally dilatory litigation tactics attributable to petitioner and his counsel (Doc. No. 46 at 9.)

The court has considered the parties' arguments and concludes that,  based upon the record before it and the applicable law, petitioner is entitled to a stay and abeyance under *Rhines*. Specifically, the court finds that petitioner's state habeas counsel's failure to exhaust petitioner's potentially meritorious Subclaim 3.B meets the *Coleman*/*Martinez* "good cause" standard.  *See Blake*, 745 F.3d at 983-84 & n.7 (the *Rhines* standard for ineffective assistance of counsel based cause is not any more demanding than the cause standard articulated in *Martinez*).

/////

21

Petitioner proffers evidence that his state habeas counsel failed to independently investigate the facts underlying his potentially meritorious Subclaim 3.B allegations that petitioner's trial counsel provided ineffective assistance at the penalty phase of the trial by failing to investigate and challenge the validity of petitioner's 1970 robbery conviction that was presented by the prosecution in aggravation.   In support of this ineffective assistance of trial counsel claim, for example, petitioner now points to evidence that: (i) his trial counsel was on notice that the 1970 conviction would be introduced as evidence in support of a sentencing enhancement (Doc. No. 41 at 159 citing Doc. No. 16-3 at 132-33, 135, 137-38) and in aggravation at the penalty phase of petitioner's trial (*id.*, citing Doc. No. 16-4 at 232-33), (ii) the prosecutor offered into evidence the certified judgment of conviction for the 1970 robbery (Doc. No. 41-5 at 2-10; Doc. No. 16-60 at 3-4, 72), (iii) his trial counsel did not investigate or contest the validity of that 1970 conviction (Doc. No. 16-60 at 3-6, 73-76; Doc. No. 41-13), (iv) petitioner's 1970 conviction was later found invalid on *Boykin*/*Tahl* [7] grounds by a state superior court in 1986 (Doc. No. 42 at 9-10, 15-16, 18; *see also* Doc. No. 41 at 157-64; Doc. Nos. 41-5 through 41-10, 41-13), and (v) the trial court found the allegation of petitioner's 1970 conviction to be true, added five years to petitioner's sentence, and allowed that conviction to be admitted as an aggravating factor at the guilt phase of petitioner's trial (Doc. No. 41 at 160 citing Doc. No. 16-60  at 5-6, 73-76; Doc. No. 16-6 at 261).

Based on this evidence, petitioner alleges that these omissions and failures by his trial counsel were prejudicially deficient.  (Doc. No. 41 at 165, 247-51, citing *Cowa*n, 50 Cal. 4th, at 425-26); *see also* Guideline 10.7, *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 HOFSTRA L. REV. 913, 1015-27 (2003) (counsel handling state collateral proceedings must undertake a thorough investigation into the facts surrounding all phases of the case); *Johnson v. Mississippi*, 486 U.S. 578, 584-86 (1988) (an invalid conviction may not be used as aggravating evidence in the penalty phase of a capital case); *Strickland*, 466 U.S., at 694.

In support of his contention that he received ineffective assistance of counsel in connection with his state habeas proceedings, petitioner points to evidence that his: (i) state habeas counsel did

---

[7]  *Boykin v. Alabama*, 395 U.S. 238 (1969); *In Re Tahl*, 1 Cal.3d 122 (969).

not independently investigate and present the colorable claim of ineffective assistance of trial counsel (Doc. No. 16-83 at 31-35; Doc. No. 41-14), (ii) state habeas counsel's omissions were not motivated by legal tactics (Doc. No. 16-84 at 30), but instead were attributable to the fact that his counsel was unaware that petitioner's 1970 conviction was invalid (Doc. No. 41-14 at 3), (iii) state habeas counsel's omissions and/or failures were prejudicially deficient (*Strickland*, 466 U.S., at 694; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); *Yates v. Sinclair*, No. C13-0842RSM, 2018 WL 2387791, at **1-2 (W.D. Wash. May 25, 2018) (petitioner's claim that an invalid prior conviction was used as aggravating evidence in the penalty phase of his trial justified the granting of a *Rhines* stay); *cf. Davila v. Davis*, __U.S. __, 137 S. Ct. 2058, 2067 (2017) (effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed)).

Respondent's suggestion that Subclaim 3.B's claim of penalty phase ineffective assistance by failure to discover and present the invalidity of petitioner's 1970 conviction is not a substantial claim under *Martinez* (*see* Doc. No. 45 at 11), is belied by the record.  *See Storey v. Paramo*, No. 17CV0023-LAB(MSB), 2019 WL 1317792, at *35 (S.D. Cal. Mar. 22, 2019), *report and recommendation adopted*, No. 17CV23-LAB (MSB), 2019 WL 4040701 (S.D. Cal. Aug. 27, 2019), citing *Martinez*, 566 U.S., at 14 (holding that a claim is "substantial" if the petitioner can show that "the claim has some merit.").  Moreover, respondent's reliance upon the decisions in  *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *Brady v. Maryland*, 373 U.S. 83 (1963) in arguing the Subclaim lacks merit (*see* Doc. No. 45 at 11) is misplaced because here trial counsel's alleged failure to investigate petitioner's 1970 conviction is independent of any alleged conflict of interest or prosecutorial misconduct.  (*See e.g.*, Doc. No. 41 at 162-63, citing *Rompilla v. Beard*, 545 U.S. 374, 383-87 (2005) (trial counsel was ineffective in failing to examine the court file regarding the defendant's prior conviction).

The court concludes that petitioner has adequately demonstrated that the unexhausted allegations now made in support of his Subclaim 3.B are potentially meritorious under *Rhines*. These allegations implicate federal constitutional grounds for habeas relief including the effective

assistance of penalty phase counsel, the fundamental fairness of petitioner's trial, and the reliability of his conviction and sentence, and are at least "colorable" and not "hopeless" upon consideration of the state record. *See Cruz v. Mitchell*, No. 13-CV-2792-JST, 2015 WL 78779, at *3 (N.D. Cal. Jan. 5, 2015) (petitioner's unexhausted claims are potentially meritorious where they are not "vague, conclusory, or patently frivolous"); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (federal habeas relief is available where alleged constitutional error by the trial court had a substantial and injurious effect on the verdict); *Strickland*, 466 U.S., at 694 (federal habeas relief for ineffective assistance of counsel is available where, absent counsel's deficient conduct, there is a reasonable probability of a different outcome).  As one district court has noted:

> Courts in this circuit have found good caused based on a similar showing.  *See* [*Cruz*] (petitioner's showing that current counsel uncovered evidence of jury misconduct that could have been uncovered, and raised, by state habeas counsel is sufficient showing of ineffective assistance of counsel for *Rhines* stay).

*Ervine v. Warden, San Quentin State Prison*, No. 2:15-CV-1916 TLN DB, 2018 WL 372754, at *3 (E.D. Cal. Jan. 10, 2018), *report and recommendation adopted,* No. 2:15-CV-01916-TLN-DB, 2018 WL 1173959 (E.D. Cal. Mar. 6, 2018); *cf. Barrera v. Muniz*, No. 2:14-CV-2260 JAM DAD P, 2015 WL 4488235 at *3 (E.D. Cal. July 23, 2015), *report and recommendation adopted*, 2015 WL 6736813 (E.D. Cal. Nov. 4, 2015) (no good cause found where petitioner submitted no evidence in support of ineffective assistance of counsel).  The Ninth Circuit has made clear that the federal court should not usurp the state court's right to first address the merits of a "colorable federal claim." *Dixon,* 847 F.3d at 722.

The court observes that in seeking stay and abeyance under *Rhines*, petitioner need not prove that he received ineffective assistance from his post-conviction counsel under the *Strickland* standard. *See e.g., Ervine,* 2018 WL 372754, at *3.  Under *Blake*, petitioner need only provide a "concrete and reasonable excuse, supported by evidence" that his post-conviction counsel failed to discover, investigate, and present to the state courts the new claim.  *Id.*; *see also Martinez*, 566 U.S., at 14.  Here, the court finds that petitioner has carried this burden, for the reasons stated above.  *See Blake*, 745 F.3d, at 983.

Additionally, the court finds nothing in the record suggesting that petitioner has engaged in "intentionally dilatory litigation tactics," either prior to or after filing his amended federal petition. Petitioner was required to have this court determine the exhaustion status of his federal petition before filing his exhaustion petition in state court. (*See* Doc. No. 42 at 18-19, citing *Lucas v. Davis*, No. 15CV1224-GPC (WVG), 2017 WL 1807907, at *10–11 (S.D. Cal. May 5, 2017) (petitioner was not dilatory in waiting for the federal court to rule on exhaustion before filing a petition in state court); *Leonard v. Davis*, No. 2:17-CV-0796-JAM-AC DP, 2019 WL 1772390, at *5 (E.D. Cal. Apr. 23, 2019), *report and recommendation adopted*, 2019 WL 2162980 (E.D. Cal. May 17, 2019) (same).  Respondent does not argue otherwise, nor has respondent suggested that petitioner has engaged in intentionally dilatory tactics, implicitly conceding this point.  (*See* Doc. No. 45.)

Furthermore, the record before this court suggests that petitioner has investigated and ascertained his unexhausted claims, and sought stay and abeyance of this action so that he may pursue state court exhaustion of those unexhausted claims, consistent with the court's case management process and scheduling orders.  Indeed, as noted, petitioner filed his motion for stay and abeyance under *Rhines* contemporaneously with his operative amended federal petition.

The court need not determine whether a *Rhines* stay is appropriate as to each of petitioner's unexhausted Claims/Subclaims.  A federal habeas petitioner need only show that one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*.  544 U.S. at 277; *see also Horning v. Martel*, No. 2:10-CV-1932 JAM GGH DP, 2011 WL 5921662, at **2-3 (E.D. Cal. Nov. 28, 2011), *report and recommendation adopted*, 2012 WL 163784 (Jan. 19, 2012) ("One claim requiring a stay acts as an umbrella for all claims."); *Jackson v. CSP-Solano*, No. 2:14-CV-2268 MCE-DB P, 2017 WL 404583, at *5 (E.D. Cal. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 896325 (E.D. Cal. Mar. 6, 2017) (same).  Because petitioner has satisfied the requirements of *Rhines* as to unexhausted Subclaim 3.B, federal proceedings should be stayed and held in abeyance until petitioner has filed an exhaustion petition and the state courts have acted on it.[8]

---

[8]  Of course, the court expresses no opinion on the ultimate merits of the unexhausted Claims/Subclaims.

1    Of course, a *Rhines* stay may not be indefinite or without reasonable time limits established
2  for petitioner's return to state court.  544 U.S. at 277–78.  Although the duration of the stay of
3  these federal habeas proceedings is dependent upon how long the exhaustion petition is pending
4  before the state courts, it will conclude upon the rendering of a final decision in state court on the
5  exhaustion petition.

6    For all of the reasons stated above, the court finds that:  (i) petitioner has established good
7  cause for the granting of a stay of these proceedings based on his showing that post-conviction
8  counsel could have, but failed to, raise unexhausted Subclaim 3.B; (ii) petitioner's Subclaim 3.B
9  is potentially meritorious;  and (iii) there is no indication that petitioner has acted in an
10  intentionally dilatory fashion.[9]

11                              III. CONCLUSION

12    Accordingly, the court finds that petitioner's Claims/Subclaims 1.B.2, 1.C,  2.D, 2.E, 3.B,
13  3.K, and 24 as asserted in the operative amended federal petition for habeas relief are
14  unexhausted.  Petitioner's motion for stay and abeyance under *Rhines* (Doc. No. 42) is granted.
15  Any and all currently scheduled dates in this federal habeas proceeding are hereby vacated.
16  Petitioner shall file his state exhaustion petition within thirty (30) days from the date of this order
17  and inform this court within thirty (30) days of a final decision by the state court on his
18  exhaustion petition.

19
20  IT IS SO ORDERED.
21
22    Dated:   __July 13, 2022__                    _____
                                                     UNITED STATES DISTRICT JUDGE
23

_____

24  [9]  The *Rhines* analysis conducted above also strongly favors the issuance of the requested stay
25  under the court's inherent power to manage its dockets and stay proceedings.  *See Ryan v. Gonzales,* 568 U.S. 57, 73-74 (2013) (citing *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).
26  Particularly, on the facts and circumstances of this case, granting a stay of these federal habeas proceedings pending exhaustion will eliminate the possibility of piecemeal litigation, *see*
27  *Calderon v. United States District Court* (*Taylor*)*,* 134 F.3d 981, 987-88 (9th Cir. 1998),
28  *abrogated on other grounds by Jackson*, 425 F.3d at 660-62, and will also promote comity, *see Lundy,* 455 U.S. at 518.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28